UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **TIFFANY J. MASCORRO,** | ‖ | |
| **Plaintiff,** | ‖ | |
| | ‖ | |
| **v.** | ‖ | **CIVIL NO. SA-05-CA-590-FB** |
| | ‖ | |
| **AMERICAN FUNDS SERVICE** | ‖ | |
| **COMPANY, INC. d/b/a AMERICAN** | ‖ | |
| **FUNDS,** | ‖ | |
| | ‖ | |
| **Defendant.** | ‖ | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   **Honorable Fred Biery**
      **United States District Judge**

Pursuant to the order of referral[1] in the above-styled and numbered cause of action to the

undersigned United States Magistrate Judge and consistent with the authority vested in United

States Magistrate Judges under the provisions of 28 U.S.C. §636(b) and rule 1 of the Local Rules

for the Assignment of Duties to United States Magistrate Judges in the Western District of

Texas, the following report is submitted for your review and consideration.

## I.  JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

## II.  PROCEDURAL HISTORY

Plaintiff, Tiffany Mascorro ("Mascorro" or "plaintiff"), initiated the present lawsuit by

filing her original petition in the 150th Judicial District Court of Bexar County, Texas on June 1,

2005, alleging defendant, American Funds Service Company, Inc. ("American Funds" or

---

[1] Docket no. 4.

"defendant"), engaged in pregnancy discrimination and unlawful employment practices in violation of the Texas Commission on Human Rights Act.[2]  Mascorro's original complaint seeks back pay, compensatory damages, "further damages" for "the loss of reputation and the stigma suffered" by plaintiff, punitive damages, attorney's fees, and pre-judgement and post-judgment interest.[3]  Asserting federal question and diversity jurisdiction,[4] American Funds removed the case in accordance with 28 U.S.C. § 1441 on June 24, 2005.[5]  On June 29, 2005, American Funds filed its original answer, which denies all the substantive allegations in plaintiff's original petition.[6]  The case was referred to the undersigned on August 26, 2005,[7] and thereafter a Scheduling Order was entered.[8]  Pursuant to an amended Scheduling Order entered on December 21, 2005, the deadline for the filing of dispositive motions was March 24, 2006.[9]

On March 24, 2006, American Funds filed a motion for "final" summary judgment.[10]  On April 24, 2006, plaintiff filed her response.[11]  On May 5, 2005, American Funds filed a reply to

---

[2]  Docket no. 1, exhibit B-1 ("Plaintiff's original petition").

[3]  Plaintiff's original petition at 6-7.

[4]  See 28 U.S.C. §§ 1331 and 1332(a).

[5]  Docket no. 1.

[6]  Docket no. 3.

[7]  Docket no. 4.

[8]  Docket no. 5.

[9]  Docket no. 16.

[10]  Docket no. 20.

[11]  Docket no. 24.

plaintiff's response.[12]

### III.  <u>FACTUAL BACKGROUND</u>

Unless otherwise noted, the parties do not appear to contest the following facts, which are construed in favor of Ms. Mascorro, as the non-movant.  The facts are derived from the evidence submitted by the parties in connection with the motion for summary judgment as well as the pleadings.

Plaintiff applied for a position with American Funds on November 20, 2003, and was subsequently interviewed on November 21, 2003.[13]  In late 2003, Kristin Stork ("Stork"), a recruiting associate with American Funds, extended plaintiff an offer of employment.[14]  Either at the interview or shortly thereafter, plaintiff advised Stork she was pregnant and inquired about whether she was eligible for leave under the Family Medical Leave Act ("FMLA").[15]  On December 10, 2003, Mascorro was informed that she would not be eligible for FMLA leave until she had worked at American Funds for twelve months.[16]  At some point after her interview, most likely December 15, 2003, plaintiff accepted a position with American Funds and was to begin

---

[12]  Docket no. 25.

[13]  Docket no. 20, Declaration of Susan May at ¶ 7 ("May Declaration") and docket no. 24, exhibit A at 37:24-25 and 38:1-4 ("Mascorro Deposition").

[14]  Mascorro Deposition at 43:17-24, 44:13-25, 46:19-21, and 48:10-21.  <u>See also</u> May Declaration at ¶ 8.

[15]  Mascorro Deposition at 43:17-25 and 44:1-2.  <u>See also</u> May Declaration, exhibit 1.

[16]  May Declaration, exhibit 1 and Mascorro Deposition at 45:19-25 and 46:9-11.  Mascorro also inquired into the possibility of working a four-day work week.  May Declaration, exhibit 1 and Mascorro Deposition at 45:5-10.

training on January 20, 2004.[17]

Mascorro started work on January 20, 2004, and was employed by American Funds as a Shareholder Account Representative ("SAR") during her tenure with the company.[18]  In that capacity, plaintiff was responsible for completing the new training program which covered the basics of setting up new accounts, adding options to accounts, and handling basic shareholder calls.[19]  During her employment with American Funds, Mascorro's immediate supervisor was Kelly Green ("Green").[20]  Green was a "team leader" in Shareholder Services responsible for supervising new associates including plaintiff and five other employees.[21]  The first six to eight months of plaintiff's employment was to be devoted to the training program.[22]

On January 21, 2004, plaintiff received a copy of the company's employee handbook and was advised of the company's attendance expectations at the "New Associate Orientation."[23] The company's attendance policy was that an employee was not expected to miss more than 72 hours or nine days of work in a twelve-month period, excluding legally protected leave.[24]  In less

---

[17]  May Declaration at ¶ 9 and Mascorro Deposition at 48:17-21.

[18]  Docket no. 20, Declaration of Kelly Green at ¶ 5 ("Green Declaration").

[19]  Id.

[20]  May Declaration at ¶ 6.

[21]  Id. at ¶ 3.

[22]  May Declaration, exhibit 1 and Mascorro Deposition at 47:20-48:1.

[23]  Green Declaration at ¶ 6 and Mascorro Deposition at 50:7-19 and 51:10-19.

[24]  Mascorro Deposition at 51:16-19.  The specific language regarding absences from work in the American Funds employee handbook states "[p]lease try to limit your absences from work . . . [o]ur guidelines generally limit you to no more than 72 hours (nine days) missed in any 12-month period for reasons other than approved leave, vacation, personal time, etc." May Declaration, exhibit

than five months of work, plaintiff was absent for a total of 80.50 hours.[25]  On May 17, 2004,

plaintiff was informed by Arturo Garcia ("Garcia") and Green that her absences were impacting

her training and was advised that American Funds could not accommodate her with anymore

unscheduled time off from work and that if additional time was taken without authorization, it

could result in termination.[26]  On May 20, 2004, Garcia, Green, human resources director Susan

May ("May"), and benefits associate Tracey Hale ("Hale") again met with plaintiff.[27]  On June 7,

2004, Mascorro called in to work to report she would not be present.[28]  On June 9, 2004,

Mascorro was terminated.[29]

On June 29, 2004, plaintiff filed a Charge of Discrimination with the Equal Employment

Opportunity Commission ("EEOC").[30]  Plaintiff claimed she was discriminated against because

she was a pregnant woman, in violation of Title VII of the Civil Rights Act of 1964.[31]  The

company had a policy against harassment that required employees to report any harassing

conduct.[32]  Plaintiff did not complain about discrimination to any of her supervisors while

---

5.

[25]  May Declaration at ¶ 11; Green Declaration at ¶ 11; and Mascorro Deposition at 77:7-10 and 78:8-16.

[26]  Green Declaration at ¶ 15 and Mascorro Deposition at 65:5-66:10.

[27]  Green Declaration at ¶ 17; May Declaration at ¶ 14; and Mascorro Deposition at 70:2-8.

[28]  Green Declaration at ¶ 18 and Mascorro Deposition at 73:11-75:8.

[29]  May Declaration at ¶ 15 and Mascorro Deposition at 76:20-77:10.

[30]  Declaration of Lisa Pennington ("Pennington Declaration"), exhibit 6.

[31]  Id.

[32]  May Declaration at ¶ 18 and Mascorro Deposition at 107:6-20.

employed with American Funds and has stated she felt her job would have been in jeopardy if she did.[33]  Based on its investigation, the EEOC issued a decision on November 29, 2004, finding the agency was "unable to conclude that the information obtained establishes violations of the statutes."[34]  On June 1, 2005, Mascorro filed her original complaint in state court.[35]

## IV.  ISSUES PRESENTED

1.    Whether American Funds is entitled to summary judgment on Mascorro's pregnancy discrimination claim.

2.    Whether American Funds is entitled to summary judgment on Mascorro's harassment claim.

## V.  SUMMARY JUDGMENT STANDARD

The standard to be applied in deciding a motion for summary judgment is set forth in Federal Rule of Civil Procedure 56, which provides in pertinent part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[36]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper

---

[33]  May Declaration at ¶ 20 and Mascorro Deposition at 93:22-24

[34]  Pennington Declaration, exhibit 7.  The EEOC's decision goes on to state "[t]his does not certify that the respondent is in compliance with the statutes . . . [and] [n]o finding is made as to any other issues that might be construed as having been raised by this charge."  Id.  The EEOC's decision also informed plaintiff of her right to sue in federal or state court within ninety (90) days of her receipt of the decision, noting that the time limit for filing a state claim may be different.  Id.

[35]  Docket no. 1, exhibit B-1.

[36]  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.[37] A fact is material if it might affect the outcome of the lawsuit under the governing law.[38]  A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[39]  Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if  reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[40]

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[41]  The burden then shifts to the party opposing the motion to present affirmative evidence in order to defeat a properly supported motion for summary judgment.[42]  All evidence and inferences drawn from that evidence must be viewed in the light favorable to the party resisting the motion for summary judgment.[43]  Thus, summary judgment motions permit the Court to resolve lawsuits without the necessity of trials if there is no genuine dispute as to any material facts and the moving party is entitled to judgment

---

[37] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2510 (1986).

[38] Id. at 248, 106 S. Ct. at 2510; Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994).

[39] Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; Wise v. E.I. DuPont De Nemours & Co., 58 F.3d 193, 195 (5th Cir. 1995).

[40] Anderson, 477 U.S. at 249, 106 S. Ct. at 2510.

[41] Celotex, 477 U.S. at 323, 106 S. Ct. at 2553.

[42] Anderson, 477 U.S. at 257, 106 S. Ct. at 2514.

[43] Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 97 (5th Cir. 1993).

as a matter of law.[44]

The movant may satisfy the burden to show the "absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."[45]  If non-movant cannot provide some evidence to support its claim, summary judgment is appropriate.[46]

## VI.  BURDENS OF PRODUCTION AND PERSUASION IN DISCRIMINATION COMPLAINTS

To prevail on a claim of intentional discrimination, a plaintiff must prove by a preponderance of the evidence that his or her membership in a protected class was a motivating factor in a defendant's adverse action.[47]  A plaintiff's protected status was a motivating factor if it played a part or made a difference in the defendant's decision, even though other factors may have also influenced that decision.  A plaintiff must prove, either directly or indirectly, that defendant intentionally discriminated against plaintiff.[48]

A plaintiff may establish employment discrimination by direct or circumstantial evidence.[49]  Direct evidence is evidence of oral or written statements by those persons who

_____

[44] Fields v. City of South Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991).

[45] Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824, 123 S. Ct. 111 (2002).

[46] Stahl, 283 F.3d at 263.

[47] Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000).

[48] St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S. Ct. 2742 (1993)).

[49] Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 896 (5th Cir. 2002).

8

decided the adverse action would be taken against a plaintiff that, if believed, directly prove that plaintiff's membership in a protected status was a motivating factor in defendant's decision to take the adverse action.[50]  Circumstantial evidence is proof of a chain of facts and circumstances that, if believed, prove that plaintiff's protected status was a motivating factor in defendant's decision to take adverse action against plaintiff.[51]

When plaintiff produces only circumstantial evidence of discrimination, the Court analyzes the claim under the well-established burden-shifting framework described in McDonnell Douglas Corp. v. Green.[52]  Although the McDonnell Douglas framework is intended to be flexible, and, therefore, the requirements for a prima facie case will vary with the facts of each case,[53] a plaintiff must first carry the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination.[54]  Although the elements of a prima facie case may

---

[50]  Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775 (1989).

[51]  C.f. Fifth Circuit Pattern Jury Instructions, Criminal, § 1.08.

[52]  411 U.S. at 802, 93 S. Ct. at 1864; see also Reeves, 530 U.S. at 142, 120 S. Ct. at 2106 ("McDonnell Douglas and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases'") (citing St. Mary's Honor Center v. Hicks, 509 U.S. at 506, 113 S. Ct. 2742 )).  See also Desert Palace Inc. v. Costa, 539 U.S.90, 123 S. Ct. 2148, 2155 (2003) (to obtain a mixed-motive jury instruction "a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.  Because direct evidence of discrimination is not required in mixed-motive cases, the Court of Appeals correctly concluded that the District Court did not abuse its discretion in giving a mixed-motive instruction to the jury.").

[53]  411 U.S. at 803 n.13, 93 S. Ct. at 1824 n.13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.").

[54]  In McDonnell Douglas, the Court stated:
[a] complainant in a Title VII trial must carry the initial burden under the statute of

differ, depending on the basis of the discrimination alleged, to prevail, generally, plaintiff must prove by a preponderance of the evidence that an adverse action, that is "ultimate employment decision,"[55] was taken adverse to plaintiff and plaintiff's protected status was a motivating factor in the decision to take the adverse action.[56]

If plaintiff establishes a prima facie case, a rebuttable presumption arises that the employer unlawfully discriminated against plaintiff.[57]  The burden then shifts to defendant to present evidence that it treated plaintiff in a certain way for a legitimate, nondiscriminatory reason.[58]  Once the defendant satisfies this second part of the analysis, the presumption raised by

_____

establishing a prima facie case of racial discrimination. This may be done by showing (I) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S. Ct. at 1824.  See also Patterson v. McLean Credit Union, 491 U.S. 164, 186 -187, 109 S. Ct. 2363, 2378 (1981); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093-94 (1981).

[55]  See, e.g.,  Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 759-63, 118 S. Ct. 2257, 2268-69 (1998); Mattern v. Eastman Kodak Company, 104 F.3d 702 (5th Cir. 1997), cert denied, 522 U.S. 932, 118 S. Ct. 336 (1997); Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995).  Plaintiff must demonstrate an adverse employment action whether or not a plaintiff is proceeding by a direct or indirect method of proof.

[56]  See also Desert Palace, 539 U.S. at 101, 123 S. Ct. at 2155.

[57]  Patterson, 491 U.S. at 187, 109 S. Ct. at 2378; Burdine, 450 U.S. at 253, 101 S. Ct. at 1093.

[58]  St. Mary's Honor Center, 509 U.S. at 507, 113 S. Ct. at 2747.  See also Burdine, 450 U.S. at 255-56, 101 S. Ct. at 1094-95 ("To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.  The explanation provided must be legally sufficient to justify a judgment for the defendant.  If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.  Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason

the prima facie case is rebutted and dropped from the case.[59]  The third step of the analysis shifts

the burden back to plaintiff to prove that the reason articulated by the employer was a mere

pretext for discrimination.[60]

      For purposes of proving pretext, it is not enough to show that the stated reason was false;

plaintiff must show both that the stated reason was false and that discrimination was the actual

reason for the adverse employment action.[61]  "[T]he trier of fact may still consider the evidence

establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the

issue of whether the defendant's explanation is pretextual.'"[62]  Plaintiff need not produce

---

for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.  At this second stage, defendant is not required to prove the legitimate, nondiscriminatory reason.") (citations and notes omitted);  Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993) ("This misstatement [by a defense witness], Bodenheimer argues, renders the evidence unreliable, thereby creating a genuine factual issue. Bodenheimer's reasoning is unpersuasive.  The degree of impeachability of evidence at this stage is irrelevant.  St. Mary's directs us to avoid making any credibility determinations at this stage because 'the burden-of-production determination necessarily precedes the credibility- assessment stage.' St. Mary's, 509 U.S. at 509, 113 S. Ct. at 2748 (emphasis original).  The employer need only articulate a lawful reason, regardless of what its persuasiveness may or may not be.") (notes omitted).

    [59]  St. Mary's Honor Center, 509 U.S. at 507, 516-17, 113 S. Ct. at 2747, 2752-53.

    [60]  Id.; Burdine, 450 U.S. at 256, 101 S. Ct. at 1095.

    [61]  St. Mary's Honor Center, 509 U.S. at 516-17, 113 S.Ct. at 2752-53.

    [62]  Reeves, 530 U.S. at 142-44, 120 S.Ct. at 2106 (quoting Burdine, 450 U.S. at 255 & n. 10, 101 S.Ct. at 1089 & n. 10).  In Reeves, the Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  530 U.S. at 148-49, 120 S.Ct. at 2109.  The Court stated that, more likely than not, a showing of pretext will lead to an inference of discrimination: "Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."  530 U.S. at 148-49, 120 S.Ct. at 2108-09.

additional independent evidence of discrimination.[63]  Although "a prima facie case and sufficient

evidence to reject the employer's explanation may permit a trier of fact to determine that the

employer unlawfully discriminated and may therefore prevent summary judgment in favor of the

employer," this showing is not always enough to prevent summary judgment if "no rational

factfinder could conclude the action was discriminatory."[64]  Because plaintiff ultimately retains

the burden of persuading the fact-finder of intentional discrimination,[65] the question on summary

judgment at the pretext stage is whether there is a conflict in substantial evidence to create a jury

question regarding discrimination.

---

    [63]  See Blow v. City of San Antonio, 236 F.3d 293, 298 (5th Cir. 2001) (reiterating that no
"additional, independent evidence of discrimination" is required); Ratliff v. City of Gainesville, 256
F.3d 355, 361-62 (5th Cir. 2001) (same).

    [64]  Reeves, 530 U.S. at 148, 120 S.Ct. at 2109.
    [A]n employer would be entitled to summary judgment "if the plaintiff created only
    a weak issue of fact as to whether the employer's reason was untrue and there was
    abundant and uncontroverted independent evidence that no discrimination occurred."
    . . . [Reeves, 530 U.S. at 148, 120 S.Ct. at 2109]. . . . Whether summary judgment is
    appropriate in any particular case depends on a variety of factors, including "the
    strength of the prima facie case, the probative value of the proof that the employer's
    explanation is false and any other evidence that supports the employer's case and that
    properly may be considered."  Id.  We have said that summary judgment is
    inappropriate "if the evidence taken as a whole (1) creates a fact issue as to whether
    each of the employer's stated reasons was what actually motivated the employer and
    (2) creates a reasonable inference that [race] was a determinative factor in the actions
    of which plaintiff complains."  Vadie v. Mississippi State University, 218 F.3d 365,
    373 (5th Cir.2000), cert. denied, 531 U.S. 1150, 121 S.Ct. 1092(2001).
Pratt v. City of Houston, Tex., 247 F.3d 601, 606 (5th Cir. 2001), cert denied, 540 U.S. 1005, 124
S.Ct. 543 (2003) (note omitted); see also Grimes v. Texas Dept. of Mental Health & Mental
Retardation, 102 F.3d 137, 140-41 (5th Cir. 1996).  Although Reeves was based on a motion for
judgment as a matter of law, the standard is the same for summary judgment.  Pratt, 247 F.3d at 607
n. 3.

    [65]  Reeves, 530 U.S. at 148-49, 120 S.Ct. at 2109.

## VII.  ARGUMENTS and CONCLUSIONS OF LAW

### A.    Mascorro's Allegations

Mascorro's original petition, her live pleading, alleges that American Funds subjected her to unlawful employment practices.  Specifically, Mascorro characterizes the present action as a "pregnancy discrimination and harassment case."[66]  Plaintiff alleges that she informed the human resources department at American Funds in mid-December 2003 that she could be pregnant after being hired by defendant on November 28, 2003.[67]  Mascorro contends defendant informed her that if she needed FMLA leave then she should return to her former employer.[68]  Plaintiff claims she began her training class at American Funds on January 20, 2004, and that her work performance was good at all times.[69]

Plaintiff further alleges that when Mascorro informed her supervisor, Green, of her pregnancy, Green's attitude, demeanor, and conduct toward her changed for the worse and she began to embarrass and humiliate plaintiff on a daily basis.[70]  Plaintiff alleges that Green began to manipulate her work load so as to make her assignments more difficult.[71]  Plaintiff asserts Green would ridicule her by stating "the blood must be flowing to the baby and not you" and "we

---

[66]  Docket no. 24 at 1.

[67]  Plaintiff's original petition at 2.

[68]  Id.

[69]  Id.

[70]  Id.

[71]  Id.

do not cater to pregnant women here."[72]  Plaintiff also alleges Green would speak to plaintiff in a threatening and angry voice that "was intended to and did in fact create a hostile work environment for the plaintiff."[73]  Mascorro contends the daily stress caused by Green was "one of the factors that caused Mascorro to become ill and to be hospitalized for asthma for over one week."[74]  Mascorro indicates that subsequent doctor visits were required and that her pulmonologist prescribed a humidifying apparatus at regular intervals throughout the day.[75]  According to plaintiff, Green refused to allow Mascorro to use the machine indoors, which meant Mascorro had to go to her automobile for treatments "every few hours."[76]  Mascorro apparently asked if she could attribute the two weeks of sick leave she had incurred as a result of her asthma to her maternity leave, or stated different, she was willing to return from maternity leave two weeks early, but American Funds did not agree to such an arrangement.[77]  Mascorro acknowledges she was terminated by Garcia, manager of the shareholder account representatives department along with human resources director May on June 9, 2004.[78]

--------

[72]  Id. at 3.  Plaintiff alleges that Green did not treat the non-pregnant women or the male employees "in the same harsh way or manner."  Id.

[73]  Id.

[74]  Id.

[75]  Id.

[76]  Id.

[77]  Id.

[78]  Id.

**B.      American Fund's Motion for Summary Judgment**

     **1.      Pregnancy Discrimination**

          **a.      <u>summary of arguments</u>**

American Funds has moved for summary judgment on Mascorro's pregnancy discrimination claim, arguing its actions were "nondiscriminatory" and plaintiff was not qualified for her position due to excessive absences.[79]  Defendant argues in this case plaintiff must first establish a <u>prima</u> <u>facie</u> case of discrimination, which she cannot do.[80]  American Funds further asserts it terminated non-pregnant employees for attendance violations during the same time period that plaintiff was terminated, but no other pregnant employees were terminated during that time period for attendance violations.[81]  American Funds argues that even if the Court were to find plaintiff was able to establish a <u>prima</u> <u>facie</u> case of discrimination, defendant has articulated a legitimate, non-discriminatory reason for plaintiff's termination – excessive absences in violation of American Funds' attendance policy, which allowed for a total of 72 hours (9 days) of absences within a 12-month period.[82]  Finally, American Funds asserts plaintiff has no evidence of pretext because there is an inference of non-discrimination since Green and plaintiff were pregnant at the same time, plaintiff's subjective belief is not sufficient to establish pretext, and stray remarks are insufficient to establish pretext.[83]  In support of its motion for summary

---

[79]  Docket no. 20 at 1.

[80]  <u>Id.</u> at 7-8.

[81]  <u>Id.</u> at 8.

[82]  <u>Id.</u> at 11.

[83]  <u>Id.</u> at 12-15.

judgment, American Funds has proffered: a declaration of Kelly Green; a declaration of Susan May; a declaration of Lisa Pennington; meeting and discussion notes; copies of American Funds' short term disability program, Mascorro's acknowledgment of receipt of the employee handbook along with specific sections of the handbook; Mascorro's attendance log; a copy of San Antonio associates with job presence issues; plaintiff's responses to American Funds' first set of interrogatories and request for production; the EEOC's charge of discrimination and dismissal; excerpts from Garcia's deposition testimony; and excerpts from Mascorro's deposition testimony.[84]

In response, Mascorro argues, in sum, that she can establish a prima facie claim of pregnancy discrimination because she: (1) belongs to a protected group as a pregnant female; (2) was qualified for the position she lost; (3) was subjected to an adverse employment action in that she was fired; and (4) was subjected to pregnancy related derogatory comments and was refused any reasonable accommodation for her medical needs.[85]  Mascorro argues the reasons American Funds asserts for its actions are pretext for discrimination because she was well qualified for her position; Green's comments toward Mascorro show discrimination and harassment; American Funds was aware of Green's severe and pervasive comments; American Funds refused Mascorro's medical accommodation; American Funds has engaged in a pattern of discrimination; and Ms. Green was the ultimate decision maker.[86]  Attached to Mascorro's response to the

---

[84]  Id., Green declaration and attached exhibits, May declaration and attached exhibits, and Pennington declaration and attached exhibits.

[85]  Docket no. 24 at 4-5.

[86]  Id. at 4-10.

motion for summary judgment are copies of: Mascorro's deposition testimony; Jacklyn

Montgomery's ("Montgomery") deposition testimony; Green's deposition testimony; the

EEOC's file in Mascorro's case; and an authenticating affidavit of Edward Pina.[87]

American Funds argues in reply that Mascorro has failed to meet two essential elements

of her prima facie case of discrimination.[88]  Specifically, defendant argues that Mascorro fails to

meet the final two elements of the prima facie case in that she missed more than 72 hours of

work within a 12 month period and she cannot demonstrate that other similarly situated non-

pregnant employees were treated more favorably.[89]  American Funds maintains plaintiff's claim

"must fail because enforcement of a uniform absence control policy is a legitimate non-

discriminatory reason for termination."[90]

   **b.**   **analysis**

Title VII "prohibits various forms of employment discrimination, including

discrimination on the basis of sex."[91]  Specifically, the Pregnancy Discrimination Act ("PDA")

prohibits discrimination "because of or on the basis of pregnancy[.]"[92]  Courts analyze claims

under the PDA as they do any violation of Title VII.[93]  As discussed, to survive a motion for a

---

[87]  Id., exhibits A-E.

[88]  Docket no. 25 at 1-3.

[89]  Id.

[90]  Id. at 3.

[91]  California Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 276-77, 107 S.Ct. 683, 687 (1987).

[92]  42 U .S.C. § 2000e(k).

[93]  See Garcia v. Woman's Hosp., 97 F.3d 810, 812-13 (5th Cir.1996).

summary judgment, a plaintiff bringing a claim under Title VII must establish (or raise a genuine issue of material fact about her ability to establish) a prima facie case and may do so through direct or circumstantial evidence.[94]  To establish a prima facie case of discrimination under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) others not in the protected class who are similarly situated were more favorably treated.[95]  Assuming Mascorro has established the first three elements of her prima facie claim, she has not raised a genuine issue of material fact about whether similarly situated non-pregnant coworkers received more favorable treatment.

Under the Fifth Circuit's standard, a plaintiff must show that "similarly situated" employees were treated differently by demonstrating the disparate treatment occurred in "nearly identical" circumstances.[96]  Plaintiff does not identify a single similarly-situated non-pregnant employee or employee outside her protected class who received more favorable treatment from American Funds.[97]  Mascorro's subjective beliefs, speculation, and conclusion that she as a pregnant worker was treated differently are not sufficient to establish that similarly situated non-

---

[94]  See Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir.1998), cert. denied, 525 U.S. 1000, 119 S.Ct. 509 (1999).

[95]  Urbano, 138 F.3d at 206.

[96]  Mayberry v. Vought Aircraft, 55 F.3d 1086, 1090 (5th Cir. 1995); see also Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 901 (5th Cir. 2002) ("In discrimination cases, we compare the treatment of other employees whose conduct is 'nearly identical' to the plaintiff's conduct and who were treated more favorably than the plaintiff"); Richard v. Seariver Maritime Fin. Holdings, Inc., 59 F. Supp. 2d 616, 634 (S.D. Tex. 1998).

[97]  Docket no. 24 at 2-3, 6-7.

pregnant coworkers were treated differently.[98]  Further, the evidence establishes that American

Funds uniformly enforced its attendance policy on all employees, regardless of their status.[99]

Between January 1, 2003, and June 30, 2004, American Funds discharged 16 non-pregnant

employees due to excessive absences, and discharged 31 non-pregnant employees at the San

Antonio facility for poor performance or a violation of company policy.[100]  No other pregnant

employees were discharged during the relevant time frame.[101]

It is well-established law that a pregnant employee is only entitled to be treated as well as

other non-pregnant employees, not better.[102]  The Fifth Circuit has held that in order for a

plaintiff to show disparate treatment, she must demonstrate "that the misconduct for which she

was discharged was nearly identical to that engaged in by a[n] employee [not within her

protected class] whom [the company] retained."[103]  As such, the PDA does not protect a pregnant

employee from being discharged for being absent from work even if her absence is due to

_____

[98]   See e.g., Douglass v. United Serv. Auto. Ass'n, 79 F.3d 1415, 1430 (1996) (former employee's personal perceptions and speculation, without more, that age motivated USAA's decision to transfer employee to position with reduced pay and benefits was not sufficient to withstand summary judgment); Ray v. Tandem Computers, Inc., 63 F.3d 429, 435 (5th Cir. 1995) ("bald assertions of age discrimination are inadequate to permit a finding that proscribed discrimination motivated [defendant's] actions against [plaintiff]").

[99]   May Declaration, exhibit 14.

[100]   Id., exhibits 14 and 15.

[101]   Id.

[102]   Urbano, 138 F.3d at 207; Garcia v. Women's Hosp. of Texas, 97 F.3d 810, 813 (5th Cir. 1996).

[103]   Wallace v. Methodist Hosp. System, 271 F.3d 212, 221 (5th Cir. 2001) (citing Smith v. Wal-Mart Stores (No. 471), 891 F.2d 1177 (5th Cir. 1990) (per curiam)).

pregnancy or complications from pregnancy, unless the absences of non-pregnant employees are overlooked.[104]  American Funds did not overlook the absences of non-pregnant employees, thus, plaintiff was not entitled to any preferential treatment over her non-pregnant coworkers.

In sum, Mascorro has failed to establish the fourth element of her prima facie claim of pregnancy discrimination because she has not raised a genuine issue of material fact about whether similarly situated non-pregnant employees were treated more favorably with respect to the actions American Funds took against her.  As Mascorro has not established her prima facie case, the remaining elements of the McDonnell Douglas burden-shifting framework are not applicable.  Accordingly, American Funds' motion for summary judgment with regard to pregnancy discrimination should be granted and plaintiff's pregnancy discrimination claim should be dismissed with prejudice.

### 2.    Sexual Harassment

#### a.    summary of arguments

American Funds has moved for summary judgment on Mascorro's harassment claim.[105] Defendant maintains plaintiff's harassment claim fails as a matter of law because no evidence exists to establish that Mascorro was subjected to harassment during her employment with American Funds or that Green's alleged conduct was severe or pervasive.[106]  Defendant points to the fact that plaintiff failed to report any alleged harassment during her employment with American Funds even though she understood it was her responsibility to report harassment under

---

[104]  Id.

[105]  Docket no. 20 at 15-20.

[106]  Id. at 16.

American Funds' policy against harassment.[107]  American Funds denies plaintiff's allegations of harassment are true, but argues that even if they are, the conduct does not rise to the requisite level of hostility for a Title VII harassment claim.[108]  Defendant further contends the alleged harassment did not objectively alter the terms and conditions of Mascorro's employment, and despite plaintiff's allegations, American Funds was not obligated to comply with plaintiff's requests for accommodations.[109]

In response, Mascorro states that during her tenure, managers "such as Ms. Green" made comments, such as:

- "The blood must be flowing to the baby, because it's not flowing to you;"

- "Should we roll you down the hallway?"

- "Hold both doors open for Tiffany;"

- "We don't cater to pregnant women here;"

- "You're pregnant.  You cannot have Cokes;"

- "You shouldn't drink Cokes;" and

- "You are not allowed to have sugar and caffeine."[110]

Plaintiff maintains the comments were not isolated or playful, but were daily, harassing comments combined with abusive work assignment "intended to make her quit."[111]  Mascorro

---

[107]  Id. at 17.

[108]  Id. at 18.

[109]  Id. at 19-20.

[110]  Docket no. 24 at 5-6.

[111]  Id. at 6.

further argues the "comments made by Ms. Green were by all standards direct [and] unambiguous and occurred only weeks before her termination."[112]  Plaintiff further alleges that Garcia was "well aware of the continuing problems Ms. Green's employees were having with their treatment."[113]  Mascorro claims that each of her absences were a result of complications from her pregnancy and in each instance of her absence, she provided a note from her doctors.[114]  Plaintiff states that "[a]ccording to the pleadings, discovery responses and testimony of Tiffany Mascorro, Jacklyn Montgomery and Kelly Green there are substantial questions of fact raised in this case that make summary judgment improper."[115]

In reply, defendant states "[p]laintiff cannot prove that she was subject to a hostile work environment during her pregnancy."[116]  American Funds asserts that the comments allegedly made by Green did not create a severe or pervasively hostile workplace.[117]  Defendant maintains "[a]t best, several of these comments reflect either good manners ('Hold both doors open for Tiffany'); the state of [American Funds'] policies and the law ('We don't cater to pregnant women here') or concern for the growing fetus ('You're pregnant.  You cannot have cokes;' 'You shouldn't drink Cokes;' 'You are not allowed to have sugar and caffeine,' and at worst,

---

[112] Id. at 7.

[113] Id.

[114] Id. at 10.

[115] Id. at 5.

[116] Docket no. 25 at 3.

[117] Id.

constitute simple teasing or offhand comments that are not actionable."[118]   The remaining

remarks allegedly made by Green, according to defendant, were stray remarks as they did not

sufficiently relate to the termination decision and under the law do not amount to actionable

harassment.[119]   American Funds also argues that plaintiff cannot prove Green's comments are

related to her asthma and that even if plaintiff was forced to purchase a car-adapter for purposes

of administering breathing treatments during breaks, she is not entitled to recover under the

PDA.[120]   Finally, American Funds states that Mascorro has not identified the abusive work

assignments she was allegedly subjected to or state how they were abusive, and reiterates that

plaintiff did not complain to anyone at American Funds she was being harassed.[121]

       **b.**   <u>**analysis**</u>

      Both plaintiff and defendant couch their arguments regarding Mascorro's harassment

claim under federal law.[122]   The PDA amended Title VII to provide that women affected by

pregnancy, childbirth or related medical conditions "shall be treated the same for all

employment-related purposes . . . as other persons not so affected but similar in their ability or

inability to work."[123]   To establish a <u>prima facie</u> case of sexual harassment under Title VII,

plaintiff must show: (1) she belongs to a protected class; (2) she was subjected to unwelcome

---

[118]   <u>Id.</u> at 4.

[119]   <u>Id.</u>

[120]   <u>Id.</u> at 4-5.

[121]   <u>Id.</u> at 5.

[122]   <u>See</u> docket nos. 20, 24 and 25.

[123]   42 U.S.C. § 2000e(k).

harassment; (3) the harassment was based on her pregnancy; (4) the harassment was sufficiently severe to alter the terms and conditions of plaintiff's employment; and (5) the employer knew or should have known of the harassment in question and failed to take remedial action.[124]  In determining what constitutes an "abusive working environment," the Court looks to the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[125]

In this case, plaintiff maintains Green made the comments outlined above, Green did not allow Mascorro to use a nebulizer in the building during work hours, and that plaintiff was subjected to abusive work assignments.  The conditions of a hostile work environment must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment."[126]  Mascorro fails to produce evidence to create a genuine issue of disputed material fact that defendant's conduct met this test.  Green's actions in making arguably insensitive comments, not allowing plaintiff to use a nebulizer at her work space, and allegedly making Mascorro's employment more difficult were not physically threatening or humiliating and were not severe enough to alter the conditions of plaintiff's employment.  Further, Mascorro never complained to her immediate supervisor about Green harassing her, even though plaintiff understood it was her duty to report any such conduct during her

---

[124]  Felton v. Polles, 315 F.3d 470, 484 (5th Cir. 2002); Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).

[125]  Walker v. Thompson, 214 F.3d 615, 625 (5th Cir. 2000) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993)).

[126]  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405 (1986).

employment with defendant, as indicated in the American Funds policy against harassment.[127] Additionally, plaintiff's suggestion that her work load was manipulated is unsubstantiated, as she provides no evidence to support the claim.

The Fifth Circuit has explained that a "hostile environment claim embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace . . . [and] [a]ny lesser standard of liability, couched in terms of conduct that sporadically wounds or offends but does not hinder a female employee's performance, would not serve the goal of equality."[128] No reasonable factfinder would conclude that Green's conduct in this case was so egregious as to alter the conditions of employment and destroy plaintiff's equal opportunity in the workplace.[129] Under the PDA, an employer is obliged to ignore a woman's pregnancy and treat the employee as well as it would have if she were not pregnant.[130]  In this case, there is no evidence that plaintiff was singled out, as compared to non-pregnant employees who were similar to plaintiff's ability/inability to work,  for offensive treatment.[131]  As such, defendant's motion for summary judgment with respect to plaintiff's harassment claim should be granted.

---

[127]  Mascorro Deposition at 107:6-20.

[128]  DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995)

[129]  Id.

[130]  Urbano, 138 F.3d at 206.

[131]  One of Mascorro's co-workers at American Funds, Jacklyn Montgomery, testified that Green was "ugly" to her and other workers and was equally as demanding to the other employees Green supervised as she was with Mascorro.  Pennington Declaration, exhibit 4 at 24:12-25:4, 29:1-19, and 35:12-18 ("Montgomery Deposition").

**C.      Plaintiff's Claims Under the Texas Commission on Human Rights Act**

Although American Funds' motion is entitled "defendant's motion for final summary judgment," it does not address plaintiff's claims that defendant's conduct violated the Texas Commission on Human Rights Act ("TCHRA").[132]  Conversely, plaintiff's response to the motion for summary judgment also does not mention TCHRA, but does not contest American Funds' characterization of its motion as "final."[133] as evidenced by the title of her response, "motion in opposition to defendant's motion for final summary judgment."[134]  Accordingly, plaintiff may have abandoned the claims.

TCHRA is modeled on federal law, with the purpose of executing the policies set forth in Title VII of the Civil Rights Act of 1964.[135]  The Act makes it unlawful for an employer to discriminate against an employee with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, or national origin.[136]  Sexual harassment is a form of sex discrimination prohibited by the Act.[137]  Although the analysis of plaintiff's claims based on TCHRA may be similar to plaintiff's claims based on Title VII, it is not clear that it would be appropriate for the Court to determine the matter sua sponte

---

[132]  See plaintiff's original petition.

[133]  The title of plaintiff's response is "motion in opposition to defendant's motion for final summary judgment.

[134]  Id.

[135]  Ewald v. Wornick Family Foods Corp., 878 S.W.2d 653, 658 (Tex.App.– Corpus Christi 1994, writ denied).

[136]  See TEX. LAB. CODE ANN. § 21.051 (Vernon 2006).

[137]  Syndex Corp. v. Dean, 820 S.W.2d 869, 871 (Tex. App.– Austin 1991, writ denied).

when, pursuant to the report and recommendation procedure, the parties have the opportunity to indicate how the analysis might differ and whether additional briefing on TCHRA is required. Therefore, within the time for filing objections to the report, the parties should be given the opportunity to made additional arguments, as required.

## VIII.  RECOMMENDATION

Based on the foregoing analysis, it is recommended that:

• defendant American Funds' motion for summary judgment[138] be **GRANTED**;

• plaintiff's motion in opposition[139] be **DENIED;**

• Mascorro's claims brought pursuant to Title VII for pregnancy discrimination and harassment be **DISMISSED with prejudice**; and

• within the time for filing objections to this report, the parties be required to file advisories to address plaintiff's claims under TCHRA, specifically, whether: plaintiff has abandoned the claims; the parties' briefs addressing plaintiff's Title VII claims is applicable and dispositive of plaintiff's TCHRA claims; or, if appropriate, present additional arguments regarding the TCHRA claims.

## IX.  INSTRUCTIONS FOR SERVICE AND NOTICE
## OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for

---

[138]  Docket no. 23.

[139]  Docket no. 24.

Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.

As provided in  28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within 10 days after being served with a copy, unless this time period is modified by the District Court.  A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a de novo determination by the District Court.[140]  Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[141]

**SIGNED** and **ENTERED** this 14th day of July, 2006.

_Pamela A. Mathy_

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[140]  See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).

[141]  Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1428 (5th Cir.1996).